David I. Horowitz (Bar No. 248414)
Email: david.horowitz@kirkland.com
Jay L. Bhimani (Bar No. 267689)
Email: jay.bhimani@kirkland.com
Shannon M. Coit (Bar No. 298694)
Email: shannon.coit@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiffs
Yudhistira, Jacqualine Maryline
and Arief Rahman Hakim

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUDHISTIRA, JACQUALINE MARYLINE, ARIEF RAHMAN HAKIM,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA FLIGHT CENTER, INC., ACCESSIBLE AVIATION, INC., ACCESSIBLE AVIATION INTERNATIONAL, INC., APG FLIGHT ACADEMY CALIFORNIA LLC, MUKESH PATEL (A.K.A. MAC PATEL), and CARL NUZZO (A.K.A. CARL COUGAR),<br><br>Defendants. | CASE NO.: 2:15-cv-00686<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. Plaintiffs are foreign students who sought flight instruction in the United States to fulfill their dreams of becoming professional pilots in their home country of Indonesia. Those dreams have not yet come true, however, because Plaintiffs were swindled out of tens of thousands of dollars in a fraudulent flight school scheme that Defendants orchestrated. Defendants' scheme was simple—recruit foreign students by materially misrepresenting the flight school's certification-status and the instruction that would be provided; obtain substantial upfront tuition payments; and then abscond with those payments without providing the promised instruction. Plaintiffs seek, among other things, the return of the payments they made to Defendants, foregone wages, punitive damages, and attorneys' fees and costs.

## PARTIES

2. Plaintiff Yudhistira is an individual and a citizen of the Republic of Indonesia. Mr. Yudhistira currently resides in the State of California, County of Fresno.

3. Jacqualine Maryline is an individual and a citizen of the Republic of Indonesia. Ms. Maryline currently resides in the State of California, County of Los Angeles.

4. Arief Rahman Hakim is an individual and a citizen of the Republic of Indonesia. Mr. Hakim currently resides in the State of California, County of Los Angeles.

5. Defendant California Flight Center, Inc. ("CFC") is a California corporation with its principal place of business in this State. During the relevant period, CFC purported to operate as a flight school.

6. Defendant APG Flight Academy California LLC ("APG") is a California limited liability company with its principal place of business in this State. During the relevant period, APG purported to operate as a flight school. APG received certain tuition payments from the Plaintiffs.

7. Defendant Accessible Aviation International, Inc. ("AAI") is a California corporation with its principal place of business in this State. During the relevant period, AAI purported to operate as a flight school. AAI received certain tuition payments from the Plaintiffs.

8. Defendant Mukesh (a.k.a. "Mac") Patel is an individual and a citizen of this State.

9. Defendant Accessible Aviation, Inc. ("AA") is a Mississippi corporation with, upon information and belief, its principal place of business in Mississippi or California. During the relevant period, AA purported to operate as a flight school.

10. Defendant Carl Nuzzo (a.k.a. "Carl Cougar") is an individual who is a citizen of the State of Mississippi.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

12. The Court has personal jurisdiction over each Defendant because each Defendant is either a citizen of California and / or regularly conducts business in California, including as it relates to the facts alleged in this Complaint.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

**A. Defendants Launch Their Fraudulent Scheme—A Flight School That Misleads Foreign Students Into Making Substantial Upfront Tuition Payments, While Providing Little Or No Services.**

14. In late 2013, Defendants reached an agreement to launch their fraudulent flight school scheme. The goal of Defendants' scheme was to aggressively market their flight school to foreign students, including in Indonesia, through the use of material misrepresentations concerning their school's certification status and the

2

instruction students would receive. Defendants would then demand substantial tuition payments upfront, and abscond with the payments made without providing the promised instruction.

15. Each of the Defendants and their agents played an important role in the fraud, and used companies they owned and controlled to perpetrate the scheme.

16. Defendant Mukesh Patel was responsible for running the scheme's day-to-day operations. On September 9, 2013, Mukesh Patel acquired California Flight Center, Inc. ("CFC") and Accessible Aviation International, Inc. ("AAI") from its previous owner. Mukesh Patel used CFC, along with AAI, to operate the scheme's day-to-day operations. Mr. Patel used a third entity he controlled, APG Flight Academy California LLC ("APG"), to receive payments made by students. AAI received certain payments as well.

17. Non-party Anand Patel was responsible for, among other things, managing the scheme's aggressive marketing efforts in Indonesia. Anand Patel served as a Director of CFC and may have had an ownership interest in CFC and AAI. He also acted as an agent of Defendants when making the misrepresentations identified below, and was authorized to make those misrepresentations.

18. Defendant Carl Nuzzo was responsible for, among other things, obtaining visas for the students to travel to the United States, a necessary prerequisite for the Defendants to extract upfront tuition payments from students in Indonesia. To accomplish this goal in furtherance of the scheme, Defendant Nuzzo used an entity he owns and controls, Accessible Aviation, Inc. ("AA"). For the ostensible purpose of blurring corporate lines externally, and to mislead foreign students, AA purports to do business as "Accessible Aviation International."

19. Indeed, despite marketing itself as "Part 141 Approved" to prospective students, including Plaintiffs, neither CFC, AAI, nor APG had the requisite licensure status to offer flight instruction under Title 14, Code of Federal Regulations part 141. Part 141 certification was critically important to the Plaintiffs because, among other

things, it allows students who desire to become professional pilots to obtain pilot certifications as full time students in a structured training environment. In addition, to provide instruction to foreign students, a school must be Part 141 certified. Nor, upon information and belief, did CFC, AAI, or APG have the requisite certification to offer programs of study to immigrant students, or the ability to issue Forms I-20 to immigrant students for the purpose of obtaining student visas, despite marketing themselves as having had that ability. Defendants therefore abused the corporate form of AA, which appears to have been Part 141 Approved and had the ability to issue Forms I-20 and did so here, representing under penalty of perjury that Plaintiffs were enrolled as students at AA. Later, when Defendants' scheme unraveled and Plaintiffs demanded a refund of their payments, Defendant Nuzzo claimed that Plaintiffs were not enrolled with his school.

20. Upon information and belief, Defendants are now under investigation by the United States Department of Homeland Security on account of this scheme.

**B. Defendants Make Materially False Representations In An Aggressive Marketing Campaign Targeted To Recruiting Foreign Students, And Begin Reaping Hundreds Of Thousands Of Dollars In Payments.**

21. Defendants' scheme relied on their ability to extract substantial upfront tuition payments from students. Defendants used an aggressive marketing campaign to accomplish this goal, including print advertisements in Indonesian magazines, marketing videos, and in-person, high-pressure marketing pitches. Defendants' purported value proposition was that they could provide Part 141 certified flight training that enabled students to become professional pilots within six months. Defendants opened offices in Indonesia, managed by Anand Patel, to lure new students into the scheme and oversee marketing.

22. Defendants' marketing materials were replete with material misrepresentations that Plaintiffs actually and reasonably relied upon before signing "Training Agreements" and making substantial upfront tuition and registration payments. Upon information and belief, the FAA contacted Mac Patel several times

4

during the relevant period about Defendants' false advertising, and informed him that CFC could not obtain Part 141 certification until that false advertising ceased. Defendants continued with their scheme nonetheless.

23. By way of example and not limitation, a marketing brochure provided to prospective students at Defendants' marketing offices in Jakarta (attached hereto as Exhibit A) represents that CFC is a "FAA Part 141 approved flight school," a "fully US Federal Aviation Administration (FAA) accredited pilot training facility" and a "SEVIS (Student and Exchange Visitor Information System) approved flight school." As described above in Paragraph 19, this was not true. The brochure further represented that the school operates "the latest technology of training aircraft," including a "[Glass Cockpit] Cessna 172 S G1000," had operated continuously since 2001, and that it had "the largest number of highly experienced instructors in the area." These representations were also false. CFC was not incorporated until 2003, did not have the represented fleet (indeed, in July 2014, CFC operated only two aircraft), and did not employ the number of instructors represented. The brochure further represented that "student[s] will live in a deluxe apartment" in downtown Los Angeles on a "sharing basis." But in fact, eight students were crammed into a two-bedroom apartment. These representations were material to Plaintiffs.

24. Similar representations were contained in Indonesian-language print advertisements likewise provided to prospective students by Defendants. Copies of these advertisements are attached hereto as Exhibits B and C.

25. In addition, CFC's website from the relevant period (https://www.cfclgb.com) contained substantively similar misrepresentations. For example, in its "Frequently Asked Questions," in response to the question "Does CFC offer a Part 141 program?" CFC stated "Yes! CFC is now a FAA Approved flight training school, certified by FAA under 14 CFR Part 141 for Private & Instrument Single engine Land airplanes." This was false. The website is now offline, but a copy obtained from the Internet Archive Wayback Machine (https://web.archive.org) from

5

June 25, 2014 is attached to this Complaint as Exhibit D. Among other things, the website also stated that CFC was "SEVIS approved"; it was not.

26. Plaintiffs reviewed and relied on Exhibits A, B, and C when making their decision to enroll at Defendants' flight school. These misrepresentations were also repeated during in-person marketing sessions by Anand Patel and other agents of Defendants, including Anand Patel's assistant Mia, at Defendants' office in Indonesia. Plaintiffs relied on these misrepresentations as well. Plaintiff Yudhistira also reviewed CFC's website (attached as Exhibit D, and the misrepresentations identified in Paragraph 25 above contained therein,) before making his enrollment decision.

27. Students, including Plaintiffs, were also told during in-person recruitment sessions and in brochures that they would be provided with "personalized attention" and "One-on-One instruction." Mr. Yudhistira was told that there would be one instructor for five students, at maximum. These representations were also material to Plaintiffs. These representations were false when they were made because Defendants never intended to provide the represented instructor to student ratio or "one-on-one" instruction. Indeed, by August 2014, many students received no instruction, and there were just two instructors available.

28. Defendants also made misrepresentations in the "Training Agreements" they required new students to sign. With respect to Plaintiffs Yudhistira and Maryline, Anand Patel negotiated and signed the agreements on behalf of CFC. With respect to Plaintiff Hakim, Anand Patel negotiated and signed the agreements on behalf of both CFC and APG. "Annexure 3" purported to describe the services and training equipment that would be included in the course package. Attached as Exhibits E, F, and G are the Training Agreements between CFC and the Plaintiffs.

29. Annexure 3 to the Training Agreement represented that the "Full Course Package" that Plaintiffs purchased would include a Private Pilot License, Instrument Rating, and Commercial Pilot License following successful completion of the program. Obtaining such licenses was material to Plaintiffs because, without such a

6

license, the instruction would be practically useless. This representation was false at the time it was made because Defendants never intended to provide the training necessary to obtain such licenses. Indeed, at the time Defendants contracted with Plaintiffs and accepted tuition payments from Plaintiffs, they knew they did not have the ability to provide the represented services.

30. Annexure 3 to the Training Agreement further listed a description of the training that would be provided, and the type of equipment that would be utilized to provide that training. These representations were material to Plaintiffs because they were critical to obtaining the training and instruction Plaintiffs desired as part of the program. These representations were false at the time they were made because Defendants never intended to provide these services, or the use of the identified equipment, much of which Defendants did not even have.

31. Defendants made the misrepresentations described above with the intent to induce Plaintiffs to sign enrollment agreements purportedly committing them to make substantial tuition payments to Defendants.

### C. Plaintiffs Sign Training Agreements And Make Payments To Defendants In Reliance On Defendants' Materially False Representations.

#### 1. Plaintiff Maryline

32. Ms. Maryline first heard about CFC in October 2013, and contacted Anand Patel concerning flight instruction. Ms. Maryline also visited with Anand Patel in the Jakarta office twice and read various brochures and ads at the office, including those referenced in Paragraphs 19 through 31 above. During these discussions, Anand Patel repeated the various misrepresentations described above. In reliance on these misrepresentations, Ms. Maryline entered into a Training Agreement with CFC dated April 15, 2014. Also in reliance on these misrepresentations, Ms. Maryline paid a $1,000 registration fee on or about March 18, 2014, an additional $38,500 upfront on or about April 1, 2014, and a $500 visa fee. Ms. Maryline withdrew from her pension fund to make these upfront payments. She also left her job

7

as a flight attendant in Malaysia where she made approximately $3,000 a month, taking a six month unpaid leave to complete the six month training program.

33. Ms. Maryline came to Los Angeles on July 4, 2014 and reported to the flight school that day. She received no flight instruction.

34. Ms. Maryline next reported to school on July 7, 2014. She received no flight instruction, and only two hours of ground instruction, which CFC continued for just five days.

35. On July 11, 2014, David Parsons (the school's manager) informed Ms. Maryline and other students that they could not fly until they procured plane rental insurance, even though Defendants represented such insurance would be provided under the contract. Ms. Maryline and others were forced to then procure that insurance.

36. For several weeks thereafter, Ms. Maryline was provided no flight instruction. Ultimately, Ms. Maryline would receive only 7.2 hours of flight instruction (of the 315 hours promised to her) before Defendants shut down the school.

37. On July 31, 2014, Ms. Maryline requested a refund of her tuition payments. Anand Patel responded on behalf of CFC informing her that he would process her refund. She has never received a refund and her follow-up requests to Mac Patel have been ignored.

### 2. Plaintiff Yudhistira

38. Mr. Yudhistira first heard about CFC on or about March 2014 through print advertisements in Indonesia. Mr. Yudhistira visited CFC's website, and its office in Jakarta, and likewise heard and reviewed the various misrepresentations described in Paragraphs 19 to 31 above. In reliance on these misrepresentations, Mr. Yudhistira entered into a Training Agreement with CFC dated June 17, 2014. Also in reliance on these misrepresentations, Mr. Yudhistira paid a $1,000 registration fee on

8

1  or about June 2, 2014, and an additional $24,750 as an upfront tuition payment on or
2  about June 18, 2014.

3      39.    Mr. Yudhistira came to the United States on September 22, 2014. Upon
4  arrival in Los Angeles, he was transported to his purported luxury apartment that he
5  shared with seven other students.

6      40.    When Mr. Yudhistira first attended flight school on September 24, 2014,
7  there was no flight instructor available to him. Mr. Yudhistira proceeded to study on
8  his own until or around October 7, 2014, at which point he learned that CFC had been
9  closed. Mr. Yudhistira received no hours of flight instruction whatsoever (of the 250
10 hours promised to him).

11     41.    Mr. Yudhistira has diligently sought the return of his tuition payments
12 from Defendants, but Defendants have rebuffed or ignored his requests.

13         **3.**    **Plaintiff Hakim**

14     42.    Plaintiff Hakim first heard about CFC in late 2013 through a print
15 advertisement in a magazine. Mr. Hakim then met with Anand Patel and his assistant
16 Mia three times in CFC's Jakarta offices. Mr. Hakim relied on the material
17 misrepresentations set forth in Paragraphs 19 to 31 above. In reliance on these
18 misrepresentations, Mr. Hakim entered into a Training Agreement with APG and CFC
19 in or around February 2014. Also in reliance on these misrepresentations, Mr. Hakim
20 paid a $1,000 registration fee pursuant to the Training Agreement on or about January
21 15, 2014, and paid an additional $23,000 in upfront payments on or about February
22 21, 2014. Mr. Hakim made a further payment of $5,000 on or about April 25, 2014.
23 Mr. Hakim sold his house in Indonesia to fund his tuition. He also left his job as a
24 flight attendant making an average of approximately $2,000 per month to attend the
25 school.

26     43.    Mr. Hakim came to the United States on April 29, 2014 for flight
27 instruction. He ultimately would receive only 17 hours of flight instruction (of the
28

250 hours promised to him) until Defendants shut down the school.  He has not been refunded his tuition payments, despite demand.

### D. When Defendants' Fraud Is Exposed, Defendants Shut Down The School, Abscond With Plaintiffs' Money, And Reject Plaintiffs' Repeated Requests For A Refund Of Payments Made.

44. None of the Plaintiffs received the services promised to them in the Training Agreements, including the instruction described in Annexure 3.  This constitutes a material breach of the Training Agreements.  Plaintiffs have fully performed under the agreements.

45. Defendants also materially breached Article 2(6) of the Training Agreements, which states: "All Company aircraft are fully insured with coverage of Flight instructor and the Pilot trainee.  In any event of accident or incident our insurance Company will pay to the Student an insured amount subject to maximum coverage of USD 250,000 subject to terms of insurance policy." Training Agreement Art. 2(6).  On or about July 11, 2014, CFC informed Plaintiffs that no such insurance would be provided, and that Plaintiffs would need to obtain their own insurance to obtain any instruction.  This also constitutes a material breach of the Training Agreements.  As a result of Defendants' material breach of this provision, Plaintiff Maryline had to pay $149 out-of-pocket to obtain insurance.

46. Defendants further materially breached the accommodation provisions of the Training Agreements by failing to provide the promised accommodation.

47. Plaintiffs have been damaged on account of Defendants' material breaches of the Training Agreements, as well as Defendants' material misrepresentations alleged above.

48. Defendants have since shut down their flight school, and have refused Plaintiffs' repeated requests for a refund of payments made.

### E. Defendants Are Liable As Alter Egos.

49. CFC, APG, AA, and AAI are alter egos of one another, and of Defendants Mukesh Patel and Carl Nuzzo.

50. There is a unity of ownership and interest between the Defendants. Each of these various entities was used as a mere shell, instrumentality, and conduit to further Defendants' fraudulent scheme. CFC and AAI were used to run the scheme's day-to-day operations in Long Beach, California. AA was used to obtain visas on behalf of students. APG was used to receive payments made by students (some payments were directed to AAI).

51. Marketing materials utilized by Defendants regularly bore the logos or names of multiple entities, including CFC, AA, APG and / or AAI.

52. Defendants Mukesh Patel and Carl Nuzzo dominated and controlled CFC, APG, AA and / or AAI, and used these entities to provide services for each other in furtherance of the common scheme.

53. Defendants Mukesh Patel and Carl Nuzzo used CFC and APG to contract with students, rather than another entity, as a shield against personal liability or liability that would reach the other corporate entities.

54. Defendants commingled funds between CFC, APG, AA, and AAI. While CFC was the contracting party (along with APG in the case of Mr. Hakim), students made their payments to APG or AAI. And in certifications made to the United States Department of Justice, representatives of AA stated under penalty of perjury that Plaintiffs were attending schools operated by that entity, rather than CFC.

55. Plaintiffs are also informed and believe, and on that basis allege, that CFC, APG, AA, and / or AAI were not adequately capitalized. Mac Patel has called CFC a "dead company" that operated as a mere shell. Likewise, in conversations with CFC's previous owner in April or May 2014 (before at least one of the Plaintiffs enrolled and before substantial tuition payments were made), Mac Patel referenced a potential bankruptcy filing on behalf of CFC and AAI. Nonetheless, Defendants continued to enroll students and collect tuition payments knowing they would not be able to provide flight school services.

56. An inequitable result would arise if the separateness of the corporate forms were respected.

## CAUSES OF ACTION

### COUNT ONE

### (Breach of Contract—Against All Defendants)

57. Paragraphs 1 through 56 are incorporated by reference.

58. Plaintiffs entered into Training Agreements with CFC and / or APG, and Defendants materially breached these contracts.

59. Plaintiffs fully performed under the Training Agreements by paying their registration fees, accommodation fees, and initial tuition payments, and, for some, additional tuition fees. Plaintiffs attended the school and were available for instruction.

60. Defendants materially breached the contracts by failing to provide flight school services and fulfill their contractual obligations, as described above.

61. As a result of these material breaches, Plaintiffs suffered injuries and are entitled to damages.

### COUNT TWO

### (Fraud—Against All Defendants)

62. Paragraphs 1 through 56 are incorporated by reference.

63. As identified in Paragraphs 19 to 31 above, Defendants made numerous material misrepresentations of fact. Defendants knew their representations were false and misleading when made, or recklessly disregarded whether their representations were truthful.

64. Defendants made their representations intending to induce Plaintiffs to act in reliance upon them.

65. Plaintiffs reasonably and detrimentally relied on Defendants' misrepresentations.

66. Plaintiffs suffered injuries and are entitled to damages.

67. Defendants' actions were malicious, fraudulent, oppressive, and intended to injure Plaintiffs, and thus Plaintiffs are entitled to recover punitive damages pursuant to California Civil Code § 3294.

## COUNT THREE

**(Negligent Misrepresentation—Against All Defendants)**

68. Paragraphs 1 through 56 are incorporated by reference.

69. As identified in Paragraphs 19 through 31 above, Defendants made numerous material misrepresentations of fact. Defendants made these representations without a reasonable belief that the representations were truthful.

70. Defendants made their representations intending to induce Plaintiffs to act in reliance upon them.

71. Plaintiffs reasonably and detrimentally relied on Defendants' misrepresentations.

72. Plaintiffs suffered injuries and are entitled to damages.

## COUNT FOUR

**(Violations of Cal. Bus. & Prof. Code Section 17500, False Advertising—Against All Defendants)**

73. Paragraphs 1 through 56 are incorporated by reference.

74. Defendants caused to be made or disseminated, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable case should have been known, to be untrue and misleading to potential students, including Plaintiffs.

75. Defendants violated Cal. Bus. & Prof. Code § 17500 because their misrepresentations and omissions were material and likely to deceive a reasonable consumer.

76. Plaintiffs have suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and deceptive practices. Plaintiffs reasonably relied on Defendants' misrepresentations and omissions.

77. As a result of Defendants' misconduct, Plaintiffs were injured and are entitled to recover restitution.

## COUNT FIVE

### (Violations of Cal. Bus. & Prof. Code Section 17200 *Et Seq.* Unfair Competition—Against All Defendants)

78. Paragraphs 1 through 56 are incorporated by reference.

79. Defendants independently, unfairly, and wrongfully took funds belonging to each Plaintiff for their own gain. Defendants made knowingly false representations through advertisements, in-person representations, and otherwise to Plaintiffs to induce them to enroll in Defendants' flight school and make substantial registration and tuition payments. Defendants have refused to refund these payments.

80. The acts alleged herein constitute unfair, unlawful, and fraudulent business practices and unfair competition and "unfair, deceptive, untrue or misleading advertising" as prohibited under Section 17200 *et seq.* of the California Business and Professions Code. Defendants' false statements and conduct alleged herein violated, among other things, FAA regulations.

81. Plaintiffs were injured as a result of such unlawful acts, and are entitled to restitution.

## COUNT SIX

### (Conversion—Against All Defendants)

82. Paragraphs 1 through 56 are incorporated by reference.

83. Defendants intentionally took possession of Plaintiffs' tuition and other payments and converted it for their own gain.

84. Because Defendants have not returned Plaintiffs' payments after demands to refund this money, Defendants have prevented Plaintiffs from having

access to their property for a significant period of time (ranging from one year to six months) after each Plaintiff demanded its return.

85. Because Defendants did not provide the promised services to Plaintiffs, they are not entitled to Plaintiffs' tuition and other payments.

86. Plaintiffs did not consent to Defendants wrongfully maintaining possession of their money, and are entitled to the return of these amounts, as well as any punitive damages and other costs available under law.

## COUNT SEVEN

### (Unjust Enrichment—Against All Defendants)

87. In the alternative to their breach of contract claim, Plaintiffs contend that their Training Agreements are unenforceable, including because they are unconscionable and violate the California Private Postsecondary Education Act of 2009.

88. Defendants received a benefit from Plaintiffs, in the form of tuition and other payments, for services Defendants did not provide. It would inequitable and unjust for Defendants to retain these benefits.

89. As a result of Defendants' actions, Plaintiffs are entitled to restitution of all payments made to Defendants.

## COUNT EIGHT

### (Aiding and Abetting Fraud—Against All Defendants)

90. Paragraphs 1 through 56 are incorporated by reference.

91. Each of the Defendants engaged in fraud. Each Defendant is also liable for aiding and abetting the fraud of the other Defendants.

92. Each Defendant actually knew that the other was engaged in fraudulent activities.

93. Each Defendant's actions substantially assisted the others' fraud.

94. Plaintiffs were injured as a result of Defendants' misconduct.

15

95. Defendants' actions were malicious, fraudulent, oppressive, and intended to injure Plaintiffs, and thus Plaintiffs are entitled to recover punitive damages pursuant to California Civil Code § 3294.

## COUNT NINE

**(Conspiracy to Commit Fraud—Against All Defendants)**

96. Paragraphs 1 through 56 are incorporated by reference.

97. Defendants engaged in fraud.

98. Defendants entered into a conspiracy to commit this fraud. The agreement was explicit or may be implied from Defendants' conduct.

99. Plaintiffs suffered damages as the natural and probable consequence of Defendants' conspiracy.

100. Defendants' actions were malicious, fraudulent, oppressive, and intended to injure the Plaintiffs, and thus plaintiffs are entitled to recover punitive damages pursuant to California Civil Code § 3294.

## COUNT TEN

**(Money Had and Received—Against All Defendants)**

101. Paragraphs 1 through 56 are incorporated by reference.

102. Defendants received money from Plaintiffs for services that were not provided. Defendants did not use the money for Plaintiffs' benefit, as it should have been used. Instead, Defendants improperly retained this money for their own benefit.

## REQUEST FOR RELIEF

103. Plaintiffs seek as damages the tuition, accommodation, and registration payments described herein, foregone wages, travel and living expenses incurred as a result of Defendants' misconduct, the costs of attending a new flight school, and such other amounts (including, where applicable, restitution or restoration) to be proven at trial. On account of Defendants' malice, oppression and fraud, Plaintiffs also seek punitive damages. Plaintiffs also seek an award of attorneys' fees and costs allowed by contract, tort, and other law; an award of costs of suit as allowed by law; interest

1  on damages as allowed by law; and such other and further relief as the Court deems
2  proper, fair, equitable, and appropriate.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Yudhistira, Jacqualine Maryline, and Arief Rahman Hakim hereby respectfully request a jury trial on all issues and claims so triable.

DATED: January 29, 2015

KIRKLAND & ELLIS LLP

By:  /s/ David I. Horowitz
David I. Horowitz (Bar No. 248414)
Email: david.horowitz@kirkland.com
Jay L. Bhimani (Bar No. 267689)
Email: jay.bhimani@kirkland.com
Shannon M. Coit (Bar No. 298694)
Email: shannon.coit@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiffs*
*Yudhistira, Jacqualine Maryline and*
*Arief Rahman Hakim*